ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| American Red Ball International, Inc.<br>American Vanpac Carriers, Inc.<br>and<br>Echo Forwarders, Inc.,<br><br>Plaintiffs<br><br>v.<br><br>The United States of America,<br><br>Defendant | ) | FILED<br>MAR 3 0 2007<br>U.S. COURT OF FEDERAL CLAIMS<br><br>No. 07-211 C |

COMPLAINT

Plaintiffs complain of defendant and for their causes of action respectfully represent:

JURISDICTION

1. This Court has jurisdiction over plaintiffs' claims against defendant pursuant to 28 U.S.C. §1491(a)(2) and 41 U.S.C. §609(a)(1).

PLAINTIFFS

2. Plaintiff American Red Ball International, Inc. (Red Ball) is an Indiana corporation with its principal place of business at Seattle, Washington.

3. Plaintiff American Vanpac Carriers, Inc., (Vanpac) is a Washington corporation with its principal place of business at Martinez, California.

4. Echo Forwarders, Inc. (Echo) is a California corporation with its principal place of business at Martinez, California.

DEFENDANT

5. Defendant is the United States of America which, at all times relevant hereto, acted through the Surface Deployment and Distribution Command (SDDC) and its predecessor agency the Military Traffic Management Command (MTMC) of the Department of the Army of the United States, and its respective officers and employees.

FACTS

6. SDDC is designated by the Department of Defense as the sole manager of its domestic and international personal property procurement programs, the terms of which are set forth in the Defense Transportation Regulation (DTR), Part IV, DOD 4500.9-R, SDDC's Tender of Service and the terms of the solicitations issued by MTMC semi-annually.

7. Each plaintiff has been qualified by SDDC to participate in its semi-annual international procurements in accordance with the qualification requirements set forth in SDDC pamphlet 55-4, "How to Do Business in the Department of Defense Personal Property Program", which require each carrier, inter alia, to meet prescribed experience and financial requirements and to execute a Tender of Service.

8. Plaintiff Red Ball has continuously participated as a carrier in the international personal property program of SDDC and its predecessor agencies since 1968.

9. Plaintiff Vanpac has continuously participated as a carrier in the international personal property program of SDDC and its predecessor agencies since its inception in 1955.

10. Plaintiff Echo has continuously participated as a carrier in the international personal property program of SDDC and its predecessor agencies since 1985.

11. As relevant, SDDC solicits qualified carriers twice yearly to submit rates to provide service in its international program. International rates are filed for designated channels, to or from a state or part of a state to or from a foreign country or area, which rates remain in effect for the duration of the six-month procurement cycle unless cancelled. Rates also differ by the type of shipment and the service provided. For example Code 3 service differs from Code 4 service, as follows:

> "International Door-to-Door Container (Code 3). Carrier provides origin services, linehaul service from Origin residence to a commercial ocean terminal, ocean transportation using the Military Traffic Management Command Operations Center Universal Service Contract rates for over the ocean portion of the shipment, linehaul to destination residence, and destination services.

> "International Door-to-Door Container (Code 4). Movement of household goods in Military Traffic Management Command (MTMC)-approved door-to-door shipping containers (wooden boxes) whereby a carrier provides linehaul service from origin residence to ocean terminal, ocean transportation to port of discharge, and linehaul service to destination residence, all without rehandling of container contents." (Defense Transportation Regulation, Part IV, Definitions).

12. For the past twenty-five years, successive international solicitations of SDDC and its predecessor agencies have provided that carriers under Common Financial or Administrative Control (CFAC) may all file rates, but may not file rates which service shipments moving in the same code of service in the same international traffic channel.

13. Until 1993, the sole stockholder of Vanpac and Echo was Mr. William F. Bottoms. At that time, Vanpac and Echo had been long-standing participants in the international procurement. Vanpac had been serving military members in the international program for 38 years and Echo had been an international participant for 10 years. Vanpac and Echo did not then and do not now file rates in the same international channels. In 1993, due to his advancing years and ill health, Mr. Bottoms was compelled to sell his on-going, established carriers, Vanpac and Echo, and engaged a broker to conduct a national search for a purchaser. The only interest was expressed by the Red Ball Corporation which owned American Red Ball International which, in 1993 was also an established participant in the international procurement.

14. As a condition to entering into the purchase of Vanpac and Echo, Red Ball required prior assurance that Vanpac and Echo would be allowed to continue their established operations in the international procurement without being prohibited from filing rates in the same codes of service in the same traffic channels as Red Ball. The owners of Vanpac, Echo and Red Ball jointly negotiated an agreement with the Military Traffic Management Command (MTMC), the predecessor agency to SDDC, to allow them to continue their established operations by filing international rates without restriction as to channels or codes after Vanpac/Echo were placed under common ownership with Red Ball, without being deemed in violation of defendant's CFAC prohibition:

> "TSPs [Transportation Service Providers] declaring CFAC cannot compete in the same rate channel in the same code of service in the International Program." (SDDC Pam. 55-4).

15. MTMC executed an agreement (Att. 1) which provided that "Vanpac and Echo could continue in the ITGBL (International Through Government Bill of Lading) program without their operations being considered as violation of MTMC's CFAC prohibitions by virtue of common ownership with [Red Ball]" based on the following factors:

a. That Vanpac and Echo will continue to conduct their operations in the same manner as before the sale to the Red Ball Corporation and that both

companies would remain under the direction and control of the president of both companies.

b. That the offices of Vanpac and Echo will remain in Richmond, California and not be removed to Seattle, Washington, where the operations of Red Ball are conducted.

c. That the president of Vanpac and Echo would have the same responsibilities as he had before the purchase by the Red Ball Corporation;

d. That principal employees of Vanpac and Echo would continue to be employed so long as they desired;

e. That the operations of Vanpac and Echo will continue to be conducted entirely separately from Red Ball and the Red Ball Corporation.

f. That the rates filed by Vanpac and Echo are to continue to be established by the president of those companies without any advice, input or control from anyone affiliated with the Red Ball Corporation or its controlled or affiliated companies (including Red Ball);

g. That the Tender of Service Signature Sheets of Vanpac and Echo shall continue to be signed by the president of these companies and by the Rate/Operations Manager of both companies; and

h. That no one affiliated with the Red Ball Corporation or its affiliated companies, including Red Ball, will be involved in the operations of Vanpac or Echo. (Agreement, Att. 1, paragraph 6).

16. For over 13 years, Vanpac, Echo and Red Ball have continued to participate in the international personal property program, operating independently from each other and have filed rates in the same international channels in the same codes of service as permitted by the terms off its agreement (Att. 1), with the knowledge and acquiescence of SDDC and its predecessor MTMC. The only changes in the facts represented in the agreement have been minimal. Vanpac and Echo relocated from Richmond, California to Martinez, California a distance of ten miles and since 1996 have a successor president, Tom Olsen, due to the voluntary retirement of Richard Smith, the companies' previous president. These changes occurred 11 years ago and have been clearly and consistently disclosed in the Tender of Service Signature Sheets filed with MTMC and SDDC by Vanpac, Echo and Red Ball.

17. By letter, dated October 26, 2006 (Att. 2), the president of Vanpac wrote to Colonel Steven Amato, SDDC's Deputy Chief of Staff for Passenger and Personal Property, asserting the right of Vanpac and Echo to continue to file rates under the agreement without being considered in violation of CFAC in a new procurement designated as Families First, which continues the same provision against TSPs under

CFAC filing rates in the same codes of service in the same traffic channels. The business rules governing participation in Families First provide:

> "If there are multiple rates submitted by TSPs [Transportation Service Providers] in CFAC for the same channel and COS [code of service], all rates will be rejected, TSPs may not re-file for this channel." (Families First Business Rule 2-7).

18. By letter, dated November 30, 2006 to the president of Vanpac, Colonel Amato stated that the agreement would be terminated "concurrent with Families First implementation." (Att. 3).

19. Since the facts relied on by defendant in entering into the agreement with plaintiffs have not materially changed and since the CFAC regulation which is the subject of the agreement remains unchanged, Colonel Amato's decision is an anticipatory breach of plaintiffs' agreement which provides that Vanpac and Echo are allowed to file rates in the same codes of service in the same traffic channels as Red Ball without their operations being considered as violative of the CFAC prohibition by virtue of common ownership so long as there were no material changes in the factors specified in paragraph 6a-h, inclusive, of the agreement.

20. Plaintiffs respectfully request this Court to issue a decision declaring that SDDC's announced action precluding Vanpac, Echo and Red Ball from continuing to participate in the international household goods program on the terms set forth in the agreement dated, November 30, 1993, will constitute a breach of contract and that the participation of Vanpac/Echo and Red Ball in the international

program permitted under the terms of the agreement should not be terminated with implementation of Families First..

CLAIM FOR RELIEF

WHEREFORE, based on the foregoing, plaintiffs pray that the Court find that the Surface Deployment and Distribution Command will breach the agreement dated, November 30, 1993 by unilaterally terminating the agreement and that the Court render judgment that SDDC's action is an anticipatory breach of the agreement and remand the matter to SDDC with direction to take action consistent with the Court's decision which will permit American Vanpac Carriers, Inc./Echo Forwarders, Inc. and American Red Ball International, Inc. to continue to participate in the international personal property program in the Families First procurement by filing rates in the same codes of service in the same traffic channels without being in violation of the Common Financial and Administrative Control (CFAC) regulation and that Court grant such further relief as the Court may deemed just and proper.

Respectfully submitted,

Alan F. Wohlstetter
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs

Stanley I. Goldman
Of Counsel

Dated: March 30, 2007

# AGREEMENT

This agreement is entered into between the Military Traffic Management Command (MTMC), party of the first part, and American Vanpac Carriers, Inc. (Vanpac) and Echo Forwarders, Inc. (Echo), Red Ball Corporation (Red Ball), American Red Ball International, Inc. (International) and W. E. Saubert, an individual, parties of the second part. The purpose of this agreement is to reflect a determination by MTMC that because of the special facts and circumstances, which are hereinafter set forth, the following arrangements between the parties will not be considered as violative of MTMC's CFAC regulations.

1. Vanpac is a California corporation, having its principal place of business in Richmond, California, and has been a participant in the DOD International Through Government Bill of lading (ITGBL) Personal Property program since the inception of that program. Echo is a California corporation, located in common facilities with Vanpac in Richmond, California, and is a participant in the ITGBL program under declared CFAC with Vanpac. Both companies have been owned and controlled by William F. Bottoms, a resident of the State of California.

2. Due to advancing years and serious illness, Bottoms has found it necessary to relieve himself of his interest in these companies, <u>inter alia</u>, and is in the

process of selling these companies, together with other transportation properties, to Red Ball by transfer of capital stock and/or assets.

3. It is important to Bottoms that Vanpac, which has been offering door-to-door personal property service to the Military for over thirty years, continue after his withdrawal from the business and that the officers and employees of that company, most of whom have been with the company for many years, be able to continue in the operation without significant change. To accomplish this, Bottoms retained a nationally known broker to locate a prospective purchaser for his transportation properties. After a thorough search, the only company ready, willing and able to negotiate the purchase on reasonable terms was Red Ball.

4. Red Ball is an Indiana corporation, having its principal place of business at Seattle, Washington. Insofar as here relevant, Red Ball owns International, a Washington corporation located in Seattle, Washington, all of whose capital stock is owned by Mr. W. E. Saubert, who is also the president of that company. Red Ball, in turn, owns all of the capital stock of International, a long-term participant in MTMC's ITGBL program.

5. It is intended, and the parties of the second part, jointly and severally represent to MTMC, the party of the first part, as follows:

a. Vanpac and Echo will continue to conduct their operations in the same manner as before the purchase by Red Ball, under the direction and control of Richard M. Smith, the president of both companies.

b. The offices of Vanpac and Echo will remain in Richmond, California, in the same facilities they have occupied for over twenty years.

c. Smith will have the same responsibilities in his capacity of president of Vanpac and Echo as he had before the purchase by Red Ball.

d. No changes in the employees of Vanpac or Echo are contemplated and the anticipation is that all principal employees will be continued so long as they so desire.

e. The operations of Vanpac and Echo will continue to be conducted entirely separately from those of International and its parent Red Ball.

f. The rates to be filed with MTMC by Vanpac and Echo will be established by Smith without any advice, input or control from anyone affiliated with Red Ball or its controlled or affiliated companies.

g. No change in the MTMC Tender of Service Signature Sheets of Vanpac or Echo is contemplated, with the signatories for both companies being Richard M. Smith, the president of both companies, and MaryAnn DiNatale, the

Rate/Operations Manager of both companies.

h. Neither Saubert, nor anyone affiliated with him or with Red Ball or its affiliated companies, will be involved in the operations of Vanpac or Echo.

6. Based upon these representations, MTMC agrees that Vanpac and Echo can continue in the ITGBL program without their operations being considered as violative of MTMC's CFAC prohibitions by virtue of common ownership with International subject to the following conditions:

a. This decision is made based on the singular facts and circumstances here involved and does not constitute a precedent and will have no bearing upon MTMC"s action or decision on any future purchase that may be presented to it.

b. Should matters come to the attention of MTMC which warrant a change in its position, MTMC reserves the right, upon due notice to the parties of the second part, unilaterally to terminate this agreement.

c. The parties of the second part, together with their officers and directors, agree immediately to bring to MTMC's attention any change in the facts and circumstances set forth in this agreement, should such change arise.

WHEREFORE, it is concluded that this agreement renders unnecessary any action by MTMC under its CFAC regulations and that the fact of the purchase by Red Ball

will have no impact upon the present operations of Vanpac, Echo or International. All parties agree and accept that this agreement has no binding effect upon any persons other than the parties to this agreement. Further, all parties agree that this agreement will not be considered as a precedent in connection with the implementation of MTMC's CFAC procedures.

Dated this 30 day of November, 1993
Washington, D. C.

MILITARY TRAFFIC MANAGEMENT COMMAND

By ______________________

AMERICAN VANPAC CARRIERS, INC.

By ______________________
Richard M. Smith
Its President

ECHO FORWARDERS, INC.

By ______________________
Richard M. Smith
Its President

RED BALL CORPORATION

By ______________________
W. E. Saubert
Its President

AMERICAN RED BALL INTERNAT INC.

By ______________________
W. E. Saubert
Its President

By ______________________
W. E. Saubert
An Individual

VANPAC CARRIERS, INC.

Att. 2
p. 1 of 5

1340 ARNOLD DRIVE, SUITE 23
MARTINEZ, CA 94553-418
PHONE (925) 313-098
FAX (925) 313-095
(800) 877-044
www.vanpac.com

INTERNATIONAL & DOMESTIC FREIGHT FORWARDERS ★ HOUSEHOLD GOODS

Col. Steven Amato
Deputy Chief of Staff for Passenger and Personal Property
Military Surface Deployment and Distribution Command
200 Stovall Street
Alexandria, VA 22332-5000

October 26, 2006

Re: Families First Business Rules Comments

Dear Col. Amato,

Attached you will find a copy of a letter that I sent to Judith Tarbox on May 23, 2005 in commenting on the proposed business rules to apply to Families First (Att. 1). At that time, I forwarded a copy of an agreement with MTMC (Att. 2) which permitted American Vanpac Carriers and Echo Forwarders to continue to participate in the DOD International Personal Property program (ITGBL) although they were under common ownership with American Red Ball International, another participant in the ITGBL program, and which sets forth that this did not constitute a violation of the CFAC regulations. I then asked as to how American Vanpac Carriers and Echo Forwarders could file rates in Families First in light of the language of Section 2.7 of the proposed business rules.

Since I never had a response to that letter, I renewed my request by letter to Colonel Keller on June 2, 2005. (Att. 3). To date we have not received an answer to our letter to Colonel Keller.

Since the implementation of Families First is fast approaching, I require advice as to how American Vanpac/Echo Forwarders should file its rates in the international program when in all probability, American Red Ball International will continue its participation in the ITGBL program and will independently file rates in that program under Families First.

American Vanpac Carriers and Echo Forwarders have been active participants in the ITGBL program for over 25 years and desire to continue to provide services to SDDC under Families First. I therefore need guidance as to how American Vanpac and Echo Forwarders should file rates in Families First in light of the language presently contained in business rules 2.7.

Att. 2
p. 2 of 5

I appreciate your consideration of this matter and trust you can understand our imperative need for guidance.

I would appreciate it very much if you could have someone address the attached issue. If you have any further questions, please contact me directly.

Sincerely,

Tom L Olsen
President
American Vanpac Carriers, Inc.
Echo Forwarders, Inc.

Attachments (3)

VANPAC
CARRIERS, INC.

Att. 2
p. 3 of 5

1340 ARNOLD DRIVE, SUITE 231
MARTINEZ, CA 94553-4189
PHONE (925) 313-0989
FAX (925) 313-0958
(800) 877-0444
www.vanpac.com

INTERNATIONAL & DOMESTIC FREIGHT FORWARDERS * HOUSEHOLD GOODS

Surface Deployment and Distribution Command
Attn: SDPP-PP, Room 10N35-29 (Judith Tarbox)
Hoffman Building II
200 Stovall Street
Alexandria, VA 22332-5000

May 23, 2005

Re: Families First Business Rules

The purpose of this letter is to request advice as to how American Vanpac Carriers, Inc. (AAVP) (and its sister company, Echo Forwarders, Inc. (ECHF))[1] may continue to file rates in the Families First international program in accordance with its written agreement with MTMC, dated November 30, 1993. (Attachment 1). For the reasons stated below, my concern is that the automated system proposed to be employed in Families First, and specifically Business Rule 2.7 (Rate Filing, pp. 7-8), will prevent AAVP and ECHF from continuing to file international rates as allowed by the attached agreement with MTMC.

AAVP and ECHF have been continuously participating in the ITGBL program under the ownership of Red Ball Corporation, a holding company, which also owns the common stock of American Red Ball International, Inc. (ARBA), a participant in the ITGBL program, pursuant to the MTMC agreement.

The MTMC agreement, under which AAVP, ECHF, and ARBA participate in the ITGBL program provides:

> "6. Based upon these representations, MTMC agrees that Vanpac and Echo can continue in the ITGBL program without their operations being considered as violative of MTMC's CFAC prohibitions by virtue of common ownership with International [ARBA] subject to the following conditions..."

[1] AAVP and ECHF do not file international rates in the same channel for the same codes of service.



(OTI-893 NF)

AAVP and ECHF have complied with all of the conditions of the MTMC agreement. They conduct their operations in the same manner as prior to the purchase of their stock by Red Ball Corporation, under the independent direction and control of their president. Tom L. Olsen is now president of AAVP and ECHF, having succeeded Richard Smith, who voluntarily retired some time ago. MaryAnn DiNatale, the rates/Operations Manager of AAVP and ECHF has continued in that position. (Agreement, para. 5a). The offices of both companies remain in California although they have been relocated to Martinez from Richmond. This relocation is not a material change from the terms of the agreement, since the companies remain in California, separated from ARBA whose offices have remained in Seattle, WA. Further, MTMC/SDDC has been advised of this address change.

On June 3, 1996, MTMC was advised that the Atlas World Group, owner of Atlas Van Lines International Corp. (ATVN) acquired all of the common stock of Red Ball Corporation. By letter, dated April 22, 2002, MTMC was advised that the operations of AAVP and ECHF were being conducted independently of those of ARBA and ATVN. (Attachment 2).

The operations of AAVP and ECHF have always been conducted completely independent of ARBA, Red Ball Corporation, Atlas World Group and ATVN. The rates of AAVP and ECHF are established by Mr. Olsen without any advice, input or control from any one affiliated with any other program participant or the Red Ball Corporation, the Atlas World Group, or any one else.

My concern is that the proposed Families First rate filing system, as described in paragraph 2.7, Rate Filing Errors/Rejections, provides for the automatic rejection of the international rates of both TSPs when two TSPs under CFAC submit rates for the same channels in the same code of service. There is no present provision in the Families First Business Rules for AAVP and ECHF to continue to file international rates and operate as provided for in the agreement with MTMC.

We respectfully ask that SDDC honor this agreement and advise how AAVP and ECHF may continue to submit international rates without restriction as to channels and codes of service.

Sincerely,

AMERICAN VANPAC CARRIERS, INC.
EHCO FORWARDERS, INC.

By_______________
Tom L Olsen
President

Attachments (2)

Att. 2
p. 5 of 5

VANPAC
CARRIERS, INC.
INTERNATIONAL & DOMESTIC FREIGHT FORWARDERS * HOUSEHOLD GOODS

1340 ARNOLD DRIVE, SUITE 231
MARTINEZ, CA 94553-4189
PHONE (925) 313-0989
FAX (925) 313-0958
(800) 877-0444
www.vanpac.com

Thomas G. Keller
Colonel, U.S. Air Force
Deputy Chief of Staff for Passenger and Personal Property
Military Surface Deployment and Distribution Command
200 Stovall Street
Alexandria, VA 22332-5000

June 2, 2005

Re: Families First Business Rules Comments

Dear Col. Keller,

Attached please find the hard copy of a cover letter and attachments 1 and 2, which were electronically submitted, to Judith Tarbox relating to the Families First Draft Business Rules.

My comments deal with the CFAC issue of the Rate Filing Document. These comments deal with a very company-specific exception that American Vanpac Carriers, Inc. has been operating under since 1993. The attached copy of the cover letter explains the situation in more detail.

I am concerned that these comments may get overlooked in the flood of industry-related responses, while they should be looked at as they relate to American Vanpac Carriers, Inc.

I would appreciate it very much if you could have someone address the attached issue. If you have any further questions, please contact me directly.

Sincerely,

Tom L Olsen
President
American Vanpac Carriers, Inc.

Attachments (4)

DEPARTMENT OF THE ARMY Att. 3
MILITARY SURFACE DEPLOYMENT AND DISTRIBUTION COMMAND p. 1 of 1
200 STOVALL STREET
ALEXANDRIA, VA 22332-5000

Operations and Analysis Branch

NOV 30 2006

Mr. Tom Olsen
President
American Vanpac Carriers, Inc. (AAVP)
Echo Forwarders, Inc. (ECHF)
1340 Arnold Drive, Suite 231
Martinez, California 94553-4189

Dear Mr. Olsen:

This responds to your letter dated October 26, 2006. Thank you for bringing the May 23, 2005 letter addressed to Ms. Judith Tarbox, to our attention. We have reviewed your request to continue the Common Financial and/or Administrative Control (CFAC) exemption.

We have decided to invoke paragraph 6.b. of the 1993 agreement to terminate the agreement concurrent with Families First implementation. Thus, your exemption will expire with the start up of Families First.

In our international program, TSPs in CFAC may not file rates in the same channel/same code of service. This is our policy for all international Families First Transportation Service Providers in the Families First program.

We appreciate your continued interest in the Department of Defense Personal Property Program.

Sincerely,

Steven L. Amato
Colonel, U.S. Air Force
Deputy Chief of Staff for Passenger
and Personal Property

Printed on Recycled Paper