IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| American Red Ball International, Inc., et al.<br><br>Plaintiffs<br><br>v.<br><br>The United States of America,<br><br>Defendant | No. 07-211C<br>(Judge Hodges) |

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Alan F. Wohlstetter
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs

Stanley I. Goldman

Of Counsel

Dated: August 6, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTORY ........ 2

ARGUMENT ........ 5

I. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' NONMONETARY CLAIM FOR A DETERMINATION OF THEIR RIGHTS UNDER THE 1993 AGREEMENT ........ 5

II. THE 1993 AGREEMENT IS A CONTRACT UNDER WHICH PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF WHICH THIS COURT MAY GRANT RELIEF ........ 8

III. THE AGREEMENT IS A CONTRACT SUBJECT TO THE CONTRACT DISPUTES ACT ........ 20

CONCLUSION ........ 24

# TABLE OF AUTHORITIES

## CASES


Ace-Federal Reporters, Inc. v. Barram, 226 F.30 1329 (Fed. Cir. 2000)…………19

* Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999)………6

* CW Government Travel, Inc. v. United States, 63 Fed. Cl. 369 (2004)……6, 17, 22

Esch v. United States, 49 Fed. Cl. 631 (2001)……………………………………7

Gates v. United States, 33 Fed. Cl. 9 (1995)……………………………………7

Hamlet v. United States, 873 F.2d 1414 (Fed. Cir. 1989)…………………………24

Himfar v. United States, 355 F.2d 606, 174 Ct. Cl. 209 (1966)……………………14

* Litton Systems v. United States, 27 Fed. Cl. 306 (1992)…………………………23

Locke v. United States, 283 F.3d 521, 151 Ct. Cl. 202 (1960)…………………… 19

Lockheed Martin v. Defense Contract Agency, 397 F. Supp. 2d 659 (D. Md. 2005)……………………………………………………………18

Massachusetts Bay Transp. Auth. v. United States, 21 Cl. Ct. 252, (1990)…………7

Modern Sys. Technology Corp. v. United States, 24 Cl. Ct. 360 (1991)……………16

National Air Traffic Controllers Ass'n. v. United States, 160 F.3d 714 (Fed. Cir. 1998)……………………………………………………………7

National Rural Util., Co-Op., Finance Corp v. United States, 14 Cl. Ct. 130, 137 (1988)……………………………………………………………14

Nevin v. United States, 43 Fed. Cl. 151 (1999)…………………………………… 9

Pennsylvania Dept. of Public Welfare v. United States, 48 Fed. Cl. 785 (2001)……9

Reynolds v. Army & Air Force Exchange Serv., 846 F.2d 746 (Fed. Cir. 1988) .......... 23

Rig Masters, Inc. v. United States, 42 Fed. Cl. 369 (1998) .......... 7

Scheuer v. Rhodes, 416 U.S. 232 (1974) .......... 24

Trauma Serv. Group, Ltd. v. United States, 33 Fed. Cl. 426 (1995) aff'd 104 F.3d 1321 (Fed Cir. 1997) .......... 16

United States v. King, 395 U.S. 1 (1969) .......... 7

Vanalco, Inc. v. United States, 48 Fed. Cl. 68 (2000) .......... 7

* Wells Fargo Bank, N.A. v. United States, 26 Cl. Ct. 805 (1992) .......... 13, 14

Woll v. United States, 45 Fed. Cl. 475 (1999) .......... 16, 17

Worthington v. United States, 168 F.3d 24 (Fed. Cir. 1999) .......... 7

STATUTES

28 U.S.C. §1491(a) (2) .......... Passim

41 U.S.C. §602(a) .......... 20

41 U.S.C. §605(a) .......... 20

41 U.S.C. §609(a) (1) .......... 1, 2, 5

COURT RULES

12(b) (1) .......... 1

12(b) (6) .......... 1

OTHER AUTHORITIES

Reinstatement (Second) of Contracts, Section 71 .................................... 11

SDDC Families First Business Rule 2.7 ........................................... 4

* Cases chiefly relied upon

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| American Red Ball International, Inc., et al. | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 07-211C |
| | ) | (Judge Hodges) |
| The United States of America, | ) | |
| Defendant | ) | |

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs American Red Ball International, Inc. (Red Ball International), American Vanpac Carriers, Inc. (American Vanpac) and Echo Forwarders, Inc. (Echo) hereby submit this response to defendant's motion to dismiss their complaint under Court of Federal Claims Rule 12(b) (1) for lack of subject matter jurisdiction and Rule 12(b) (6) for failure to state a claim on which relief can be granted. For the reasons stated below, plaintiffs maintain that this Court has subject matter jurisdiction because plaintiffs are appealing a final decision of the Contracting Officer[1] under the Contract Disputes Act, 41 U.S.C. §609(a)

[1] The letter decision, dated November 30, 2006 of Colonel Steven L. Amato, the then Chief Passenger and Personal Property of the Surface Deployment and Distribution Command (SDDC), who was the Contracting Officer for the subject international personal property program is attached hereto as Attachment A. (The Contracting Officer's decision is also Attachment 3 to plaintiffs' complaint).

(1) and the Court is authorized to grant the relief requested under the Tucker Act, as amended, 28 U.S.C. §1491(a) (2).

INTRODUCTORY

Each plaintiff is a carrier and a long-standing participant in the successive International Personal Property procurements of the Department of Defense for the transportation of household goods and unaccompanied baggage of military service members and their families, administered by the Surface Deployment and Distribution Command (SDDC) and previously by its predecessor agency, the Military Traffic Management Command (MTMC). American Vanpac has participated in this procurement since 1955, its sister company Echo[2] since 1985 and Red Ball International since 1968. (Comp. ¶8, 9, 10).

This case involves the interpretation by the Contracting Officer, dated November 30, 1993 (Att. A hereto), of an agreement entered into between MTMC, plaintiffs, and plaintiffs' owner the Red Ball Corporation by which MTMC agreed that American Vanpac and Red Ball International would both be allowed to file rates in the same traffic channel and in the same code of service without being deemed in violation of the Common Financial and/or

---

[2] For the purpose of discussion in this brief, American Vanpac and Echo will jointly be referred to as American Vanpac since they have not and will not file rates in the same traffic channels in the same code of service, and it is not contended that the agreement gives them that right.

Administrative Control (CFAC) prohibition so long as plaintiffs adhered to the specified conditions set forth in the agreement. The purpose of the agreement was to provide assurance to the prospective owner of the Red Ball Corporation that American Vanpac and Red Ball International would be able to continue to file rates in the same traffic channels and codes of service in the international procurement after Red Ball Corporation purchased American Vanpac Van Lines, Inc., and its subsidiaries, American Vanpac Carriers, Inc. and Echo.[3] In the agreement, MTMC committed to allow American Vanpac and Red Ball International to file international rates in the same traffic channels and codes of service so long as their operations remained separate and independent. In reliance on this promise, Red Ball Corporation consummated this purchase by which it acquired control of American Vanpac and Echo.[4]

The subject controversy arose when SDDC issued its business rules for the Families First procurement which SDDC announced will begin in October 2007 or in early 2008. This procurement contains the same CFAC prohibition and the business rules which SDDC issued to implement the procurement to

---

[3] American Vanpac Van Lines, Inc. is a motor carrier which does not participate in SDDC's international procurement.

[4] In 1996, Atlas World Group relied on this same agreement when it purchased all of capital stock of Red Ball Corporation which owns American Vanpac, Echo and Red Ball International. By letter, dated June 3, 1996, MTMC was notified of this acquisition. Since that date MTMC and SDDC continued to be advised of this common ownership in filings by these carriers of Tender of Service Signature Sheets. The operations of American Vanpac/Echo and Red Ball International have continued to be conducted independently of each other in compliance with the conditions of the 1993 agreement, under the control of Atlas World Group. (Complaint, Att. 2, p. 3).

provide for the rejection of the bids of companies under CFAC [5] American Vanpac's president submitted a letter, dated October 26, 2006 (Complaint, Att. 2) to Colonel Steven L. Amato, then SDDC's Chief of Passenger and Personal Property, who was the Contracting Officer for the international procurement, requesting a decision on whether American Vanpac would be able to continue to file international rates in the same codes of service and traffic channels as Red Ball International in the Families First procurement, as provided for in the 1993 agreement. By letter, dated November 30, 2006, Colonel Amato stated that SDDC would terminate the 1993 agreement effective with the implementation of Families First. (Att. A hereto). The Contracting Officer properly interpreted the agreement as permitting American Vanpac and Red Ball International to continue their individual participation in the international procurement despite the CFAC prohibition, but concluded that all rights under the agreement were cut off by the terms of the agreement upon the inception of Families First. By its Motion, defendant does not attempt to defend the merits of the decision of the Contracting Officer but advances the contention that this Court has no jurisdiction over this claim.

---

[5] Families First Business Rule 2.7 provides:

> "If there are multiple rates submitted by TSPs [transportation service providers] in CFAC for the same channel and COS [code of service], all rates will be rejected. TSPs may not re-file for this channel."

The issue presented to this Court is whether the decision of SDDC's Contracting Officer (Att. A hereto) violates the terms of the 1993 agreement and thus constitutes an anticipatory breach of that agreement by improperly limiting plaintiffs' participation in the international procurement. We maintain that this is a matter within the Court's jurisdiction under the CDA, 41 U.S.C. §609(a) (1), and presents a nonmonetary claim upon which the Court may grant declaratory relief under 28 U.S.C. §1491(a) (2). For these reasons, as discussed below, we request that the Court deny defendant's motion to dismiss.

ARGUMENT

I. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' NONMONETARY CLAIM FOR A DETERMINATION OF THEIR RIGHTS UNDER THE 1993 AGREEMENT.

Defendant has moved for dismissal of plaintiffs' complaint first because plaintiffs are not claiming a right to monetary damages. (Defendant's Motion, pp. 5-7). Defendant's motion fails because the Tucker Act, as amended, specifically grants this Court jurisdiction over nonmonetary claims. 28 U.S.C. §1491(a) (2) provides in pertinent part:

> "...The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a) (1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of a contracting officer has been issued under section 6 of that Act." (Emphasis supplied).

Plaintiffs' complaint in this case is filed pursuant to the Court's jurisdiction under section 10(a) (1) of the CDA. 41 U.S.C. §609(a) (1), and, as the Federal Circuit held in Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999), this Court has jurisdiction under section 1491(a) (2) over a nonmonetary claim requesting an interpretation of contract terms. The Court stated:

> "…We have held above that the Tucker Act grants the Court of Federal Claims jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms…". (178 F.3d at 1270) (Emphasis supplied).

* * *

> "In sum, we uphold the trial court's decision that it had jurisdiction to entertain Alliant's request for a ruling on its contract interpretation claim…" (178 F.3d at 1277).

CW Government Travel, Inc. v. United States, 63 Fed. Cl. 369 (2004), is another case where the Court of Federal Claims found it had jurisdiction over a nonmonetary claim for a determination of the contractor's rights under a contract. Plaintiff sought a declaration from the Court that under its contract it was the exclusive provider of the involved services at 54 military installations. The Court specifically held that it had authority to interpret the contract and grant the declaratory relief requested. (63 Fed. Cl. at 387).

On the basis of section 1491(a) (2) and the Alliant and CW Travel decisions, supra, we maintain that this Court has jurisdiction over plaintiffs'

claim and that this jurisdiction is not defeated because plaintiffs are not seeking money damages.

Further, the decisions cited by defendant do not support its contention that the Court lacks jurisdiction because plaintiffs' complaint does not request money damages. None of these decisions involved claims under the CDA, and none sought relief specifically under section 1491 (a) (2), which grants this Court jurisdiction over claims for nonmonetary relief under the CDA. Worthington v. United States, 168 F.3d 24 (Fed. Cir. 1999), involved a claim for back pay by a government employee which was not a claim under the CDA. United States v. King, 395 U.S. 1 (1969) was decided before the CDA was enacted. National Air Traffic Controllers Ass'n. v. United States, 160 F.3d 714 (Fed. Cir. 1998) did not involve a claim under the CDA and the Court found it lacked jurisdiction because the contract involved specifically required plaintiff's claim for monetary relief to be submitted to arbitration. Vanalco, Inc. v. United States, 48 Fed. Cl. 68 (2000), Rig Masters, Inc. v. United States, 42 Fed., Cl. 369 (1998), Esch v. United States, 49 Fed. Cl. 631 (2001) and Gates v. United States, 39 Fed. Cl. 9 (1995) did not involve CDA claims. The decision in Massachusetts Bay Transp. Auth. v. United States, 21 Cl. Ct. 252, 262 (1990) predates the 1992 amendment to the Tucker Act which granted this Court jurisdiction over nonmonetary claims under the CDA. Thus, none of the

decisions cited by defendant can defeat the Court's jurisdiction over nonmonetary CDA claims brought under section 1491(a) (2).

For the above reasons, we maintain this Court has jurisdiction over plaintiffs' claim under the CDA and section 1491(a) (2) and respectfully request that defendant's motion to dismiss for lack of jurisdiction be denied.

## II. THE 1993 AGREEMENT IS A CONTRACT UNDER WHICH PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF WHICH THIS COURT MAY GRANT.

Defendant's counsel next moves for dismissal of plaintiffs' complaint alleging that SDDC is not bound by the terms of the 1993 agreement to which the parties have adhered for over 13 years because the agreement is not a contract. (Motion, pp. 7-9). For the reasons stated below, we maintain that the 1993 agreement is a contract and that plaintiffs have stated a claim upon which relief may be granted.

Defendant's contention is a post hac rationalization which ignores the fact that officials of MTMC and its successor agency SDDC, as well as officers of American Vanpac and Red Ball International, have recognized for that the agreement imposes obligations on the respective parties to which both parties have consistently and continuously adhered. During the over 13 years since the agreement was executed, MTMC and SDDC have honored the commitment that AmericanVanpac and Red Ball International may file international rates in the same traffic channels and codes of service and American Vanpac and Red Ball

International have honored their commitment to maintain separate and independent operations. Further, this action is an appeal of the decision, dated November 30, 2006 (Att. A hereto) of Colonel Steven L. Amato, SDDC's Contracting Officer, who acknowledged the agreement is contractually binding by invoking clause 6b as the sole basis for termination and by continuing the agreement until the "start up of Families First." The fact that Colonel Amato did not contend the agreement is not binding, as defendant's counsel contends, further supports the conclusion that the agreement is a contract.

Defendant's counsel cites authority[6] for the general proposition that a contract requires lack of ambiguity in offer and acceptance, (2) mutuality of intent to contract, (3) sufficient conduct by a government representative having actual authority to contract and (4) consideration. He contends that the 1993 agreement is "neither definite nor binding, and no real consideration was exchanged between the parties." (Motion, p. 8).

For the following reasons, we maintain that the 1993 agreement is a contract under the above criteria. First, there is no ambiguity in the offer and acceptance. MTMC allowed American Vanpac and Red Ball International, although under the control of Red Ball Corporation, to continue their long-time participation in the international personal property program and to file rates in the same codes of service in the same traffic channels without being deemed in

---

[6] Pennsylvania Dept. of Public Welfare v. United States, 48 Fed. Cl. 785, 787-788 (2001); Nevin v. United States, 43 Fed. Cl. 151 (1999).

violation of the CFAC prohibition so long as they continued to operate as separate and independent entities by complying with the specified conditions incorporated in paragraph 5a-h of the agreement. This offer was accepted by Red Ball Corporation by its action in purchasing American Vanpac with its promise to comply with MTMC's conditions.

Second, the parties had a mutual intent to contract. MTMC's intent was to ensure that American Vanpac would continue its service in the international procurement. MTMC had been advised that due to the advanced age and ill health of its owner, William Bottoms, American Vanpac could continue only if it was purchased by a qualified purchaser. The owner of Red Ball Corporation, W.E. Saubert, wanted to purchase American Vanpac, but would do so only if MTMC would ensure that American Vanpac would be able to continue to file international rates in the same codes of service and in the same traffic channels as Red Ball International, its wholly-owned subsidiary. That both parties intended to enter into a binding contract was manifest. American Vanpac's value to Red Ball Corporation was dependent upon MTMC's promise that American Vanpac and Red Ball International would be able to file international rates in subsequent rate cycles, without restriction while under common control. MTMC's promise would accomplish this purpose only if MTMC intended its promise to be binding. Red Ball Corporation relied on the promise as binding

in purchasing American Vanpac, and Atlas World Group relied on continuation of this commitment when it purchased Red Ball Corporation in 1996.

Third, defendant's counsel does not dispute that the 1993 agreement was executed on behalf of MTMC by an officer with contract authority, Colonel H. J. Gerber, MTMC's then Director of Personal Property.

Fourth, there was consideration for the 1993 agreement in the exchange of mutual promises by the parties. It is well established that the exchange of mutual promises is consideration for a contract. The Restatement (Second) of Contracts, section 71 provides:

> "(1) To constitute consideration, a performance or a return promise must be bargained for.
>
> (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."

Defendant's counsel contends there was that there was 'no' real consideration, viz. "[n]o money was exchanged and the Government received no tangible benefit." (Motion, p. 8). We disagree.

In the instant case, MTMC promised to allow American Vanpac and Red Ball International to file international rates in the same traffic channels and codes of service without being deemed in violation of the CFAC prohibition if they complied with the conditions which required their operations to continue to be conducted separately and independently. In return American Vanpac and

Red Ball International promised they would continue to operate separately and independently and did so. We maintain that this exchange of mutual promises constitutes consideration for the 1993 agreement.

For the above reasons, we maintain that the agreement satisfies all of the requisites for a contract under the above criteria. The agreement memorializes the parties' mutual intent by providing in paragraph 6:

> "Based upon these representations [in paragraph 5a-h], MTMC agrees that Vanpac and Echo can continue in the ITGBL program without their operations being considered as violative of MTMC's CFAC prohibitions by virtue of common ownership with International subject to the following conditions…" (Complaint, Att. 1, ¶6).

Based on this commitment by MTMC, Red Ball Corporation purchased American Vanpac, and in 1996, Atlas World Group purchased Red Ball Corporation. For over 13 years and 26 semi-annual international rate filings, the plaintiffs and MTMC and SDDC have adhered to the terms of this agreement. In entering into this agreement, there was no contemplation that MTMC could walk away from the agreement at will. To accomplish its purpose, the agreement was to be binding to provide the assurance to Red Ball Corporation that Americna Vanpac and Red Ball International would be able to file international rates in the same codes of service and the same channels without being deemed in violation of the CFAC prohibition.

As a matter of law, the fact that the Red Ball Corporation relied on the promise of MTMC in the 1993 agreement as a pre-condition to purchasing American Vanpac and would not have consummated the purchase but for MTMC's promise establishes that the 1993 agreement is a contract which binds SDDC as a successor to MTMC.[7] As the Court stated in Wells Fargo Bank, N.A. v. United States, 26 Cl. Ct. 805, 810 (1992):

> "...The court finds that the Conditional Commitment constitutes a unilateral contract, where one party makes a promise as consideration for the contract, and the contract is deemed to be accepted when the other party begins performance. 'There is ample case law holding that a contractual relationship arises between the government and the private party if promissory words of the former induce significant action by the latter in reliance thereon.' " (26 Cl. Ct. at 810) (Citations omitted).

In the Wells Fargo decision, the Court applied this principle in holding there was consideration for a unilateral contract where the government promised to guarantee bank loans issued to certain energy development projects, and in reliance on this promise, the plaintiff bank made a loan which met the specified conditions of the government's commitment. The Court held that the government breached this contract when it refused to guarantee the bank's loan, even though the bank and the project met all of the conditions specified by the government for issuance of the loan guarantee, See also: National Rural Util., Co-Op., Finance Corp v. United States, 14 Cl. Ct. 130, 137

---

[7] Atlas World Group also relied on MTMC's commitment in the 1993 agreement when it acquired control of American Vanpac and Red Ball International through its purchase of the capital stock of Red Ball Corporation in 1996.

(1988) aff'd. 867 F.2d 1393 (Fed. Cir. 1989); Himfar v. United States, 355 F.2d 606, 174 Ct. Cl. 209, 214-215 (1966).

This principle applies to plaintiffs' agreement with defendant. American Vanpac and Red Ball International have both complied with all the conditions set forth in paragraph 5a-h of the agreement. As in the case of the plaintiff bank in the Wells Fargo case, the owner of the Red Ball Corporation relied on the government's commitment in purchasing Vanpac.[8] This action was an acceptance of the government's offer which resulted in a binding contract. As the Court found in the Wells Fargo decision, the government is not free to terminate except under the terms of the agreement, which is the very issue on the merits presented to this Court by plaintiffs' complaint.

During the over 13 years since the agreement was executed on November 30, 1993, the parties have adhered to its terms. Plaintiffs American Vanpac and Red Ball International have maintained completely separate and independent operations as required by paragraph 5a-h of the agreement and MTMC and its successor agency, SDDC, have honored the commitment that American Vanpac and Red Ball International may file international rates in the same codes of service in the same traffic channels, despite its CFAC regulations.

This commitment by MTMC and SDDC has permitted American Vanpac and Red Ball International to file rates in the same traffic channels and codes of

---

[8] Atlas World Group likewise relied on the government's commitment in 1996 when it acquired control of Vanpac.

service in response to 26 international solicitations. The acceptance of the filed rates by the agency in each rate cycle required the government to guarantee to American Vanpac and Red Ball International a designated amount of traffic in the those traffic channels and codes of service where the carrier set or met the low rate. In the Families First procurement, shipments will be awarded based on 70 percent on service, and 30 percent on cost. Carriers will be guaranteed traffic commensurate with these ratings. Based on the present service ratings of American Vanpac of 76.51 for household goods and 77.81 for unaccompanied baggage, and Red Ball International of 75.84 for household goods and 88.32 for unaccompanied baggage, with 75 percent being rated by SDDC as good, American Vanpac and Red Ball International will be guaranteed shipments during Families First if the agreement is not terminated

The issue on the merits of this case is whether implementation of the Families First procurement, which like the current procurement contains the prohibition against carriers under CFAC filing international rates in the same codes of service in the same traffic channels, is a matter which permits SDDC unilaterally to terminate the agreement under the terms of paragraph 6b. This is a matter to be determined on a motion for summary judgment and not on defendant's motion to dismiss.

Lastly, defendant's counsel argues that the 1993 agreement is not a contract because it does not contain any provision to determine a breach or

remedies for breach, citing Modern Sys. Technology Corp. v. United States, 24, Cl. Ct. 360, 361 (1991); Trauma Serv. Group, Ltd. v. United States, 33 Fed. Cl. 426 (1995), aff'd 104 F.3d 1321 (Fed Cir. 1997); and Woll v. United States, 45 Fed. Cl. 475, 478 (1999). (Motion, pp. 8-9). These decisions do not support the claim of defendant's counsel that there is no remedy for breach of the 1993 agreement. In Modern Sys. Technology, the Court found that a basic pricing agreement was not a contract because the government did not assume any obligation to plaintiff[9] and thus there was no breach of contract by the government. That is not the case with the 1993 agreement by which the government is obligated to allow American Vanpac and Red Ball International to continue to participate in successive international rate cycles in which they are guaranteed shipments when they file a low rate or me-too low rates in response to the government's solicitation.

[9] SDDC has recognized its obligation to award makeup tonnage to a carrier which it wrongfully terminates from participation in its international procurement to compensate it for tonnage it would have received but for SDDC's wrongful termination. In a message ordering reinstatement of a participant in the international procurement which had been wrongfully disqualified; the Commander of SDDC stated:

> "1. The SDDC DEP to the CDR has lifted DFWG's disqualification in letter signed 22 Feb. 07.
>
> 2. Effective 2 Mar 07, DFWG is reinstated and must be returned to the TDR absent any traffic denial action. DFWG must return at the same TQAP score they had prior to disqualification and makeup tonnage should be awarded. This MSG supersedes earlier msgs sent regarding DFWG.
>
> 3. Tonnage shall be allocated immediately when DFWG has resubmitted their LOI."

The Trauma Serv. Group case, cited by defendant (Motion, p. 8), involved a cooperative agreement by which a medical service company was allowed to provide services at military health care facilities. In denying plaintiffs' claim, the Federal Circuit stated:

> "A breach of contract is a failure to perform."

The Court found that the plaintiff "does not allege any contractual duty which defendant failed to perform". (104 F.3d at 1325). That is not the case presented here as plaintiffs allege that the Contracting Officer's decision to terminate the 1993 agreement, i.e. not perform, is a breach. Whether it is a breach of the agreement is the issue to be determined by the Court on the merits.

Defendant's counsel also cites Woll v. United States, 45 Fed. Cl. 475, 478 (1999) (Motion, p. 9) for the principle:

> "Whenever one of the parties to an agreement can terminate without consequence, an enforceable contract does not exist."

The Court found that the contract was unenforceable because both parties could terminate at will. We maintain that is not the case presented here because the agreement, paragraph 6b, specifies the conditions on which SDDC can terminate the agreement. As stated above, the issue for the Court to decide on the merits is whether SDDC has a right to terminate under the terms of paragraph 6b of this agreement.

As the Court found in the CW Government Travel decision, supra, this Court has authority under the CDA to construe a contract to determine whether the government actions will result in an anticipatory breach the agreement. The Court stated:

> "The applicability of the Danzig anticipatory breach standard to Carlson's claim appears to be consistent with the CDA itself, which recognizes that contractors do not have to wait to file a claim until an actual violation has occurred…" (63 Fed. Cl. at 389).

The Court then denied the government's motion to dismiss stating:

> "The court finds that the facts before the court sufficiently evidence a "live dispute" involving an anticipatory breach of contract to defeat defendant's motion to dismiss Carlson's claim for declaratory relief." (63 Fed. Cl. at 390).

We maintain that there is a "live dispute" as to whether SDDC's termination is authorized by the terms of the agreement. Should the Court hold that SDDC has anticipatorily breached the agreement with plaintiffs, it has authority under section 1491(a) (2) to remand the matter to SDDC with instructions to abide by its decision. Section 1491(a) (2) provides in pertinent part:

> "In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."[10]

Defendant's counsel further claims that there are no consequences to defendant should it wrongfully terminate the agreement. If the Court should hold that the termination violates the terms of the agreement and American Vanpac and Red Ball International are precluded from filing rates in the Families First procurement when it is implemented, we maintain that plaintiffs would have a cause of action for loss of profits or make-up tonnage[11] resulting from the wrongful action of the SDDC. This relief is predicated on the fact that a carrier participating in the international procurement will be guaranteed shipments in Families First if the agreement is not terminated. In similar procurements, where the government has been obligated to purchase its requirements from among multiple qualified contractors and the government breaches the contract by not purchasing from the plaintiff, courts have held the government to be liable to the contractor for lost profits. See Ace-Federal

---

[10] Commenting on the Court of Federal Claims jurisdiction under this provision, the Federal District Court stated:

> "...Furthermore, this Court observes that '[i]n any case within its jurisdiction the [Court of Federal Claims] shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.' Id." Lockhead Martin Corp. v. Defense Contract Audit Agency, 397 F. Supp. 2d 659, 667 (D.Md. 2005).

[11] SDDC's obligation to award make-up tonnage is set forth in footnote 9, supra.

Reporters, Inc. v. Barram, 226 F.3d 1329 (Fed. Cir. 2000) and Locke v. United States, 283 F.2d 521, 151 Ct. Cl. 262 (1960).

For the above reasons, we maintain that the 1993 agreement is a contract and that the plaintiffs have stated a claim under the contract for the declaration that SDDC's termination of the agreement solely because of the implementation of Families First is an anticipatory breach of the contract which is a matter within the jurisdiction of this Court.

## III. THE AGREEMENT IS A CONTRACT SUBJECT TO THE CONTRACT DISPUTES ACT (CDA).

Defendant contends, without meaningful discussion, that the agreement is not a contract subject to the CDA. (Motion, pp. 10-11). This contention is without merit.

As defendant's counsel correctly states, the CDA applies to all contracts for procurement of property, services or construction. 41 U.S.C. §602(a). The SDDC international procurement is a procurement for household goods moving services. The 1993 agreement states conditions under which plaintiffs may continue to participate in the SDDC international procurement. Plaintiffs' claim under the 1993 agreement is therefore, a claim relating to a contract for procurement of services governed by the CDA, 41 U.S.C. §605(a), and is within the jurisdiction of this Court.

Lastly, defendant's counsel inexplicably contends that the Court lacks CDA jurisdiction, alleging without support, that plaintiffs did not submit a claim to the Contracting Officer for final decision. (Motion, p. 11). Attachment 2 to the plaintiffs' complaint is a letter, dated October 26, 2006 from American Vanpac's president to Colonel Steven L. Amato, the then SDDC Deputy Chief of Staff for Passenger and Personal Property, who was SDDC's Contracting Officer for the international procurement. In his letter, American Vanpac's president requested a decision on whether SDDC would abide by the 1993 agreement and allow American Vanpac and Red Ball International to continue to file rates in the same codes of service in the same traffic channels under the business rule proposed for Families First. The October 26, 2006 letter to Colonel Amato specifically states:

> "Attached you will find a copy of a letter that I sent to Judith Tarbox on May 23, 2005 in commenting on the proposed business rules to apply to Families First (Att. 1). At that time, I forwarded a copy of an agreement with MTMC (Att. 2) which permitted American Vanpac Carriers and Echo Forwarders to continue to participate in the DOD International Personal Property program (ITGBL) although they were under common ownership with the American Red Ball International, another participant in the ITGBL program, and which sets forth that this did not constitute a violation of the CFAC regulations. I then asked as to how American Vanpac Carriers and Echo Forwarders could file rates in Families First in light of the language of Section 2.7 of the proposed Business Rules.
>
> Since I never had a response to that letter, I renewed my request by letter to Colonel Keller [a Contracting Officer] on June 2, 2005

> (Att. 3). To date we have not received an answer to our letter to Colonel Keller.
>
> Since the implementation of Families First is fast approaching, I require advice as to how American Vanpac/Echo Forwarders should file its rates in the international program when in all probability, American Red Ball International will continue its participation in that ITGBL program and will independently file rates in that program under Families First.
>
> American Vanpac and Echo Forwarders have been active participants in the ITGBL program for over 25 years and desire to continue to provide services to SDDC under Families First. I therefore need guidance as to how American Vanpac and Echo Forwarders should file rates in Families First in the light of language presently contained in business rules 2.7."

We maintain that Vanpac president's letter dated, October 26, 2006, is a claim for a final decision under the CDA. As the Court stated in the CW Travel decision, supra:

> "...The court recognizes that, '[t]o state a [valid] non-monetary claim, there is no requirement that the contractor make a request for a sum certain.' Clearwater Constructors, Inc. v. United States, 56 Fed. Cl. 303, 309 (2003). See also GPA-I, LP v. United States, 46 Fed. Cl. 762, 766 (Fed. Cl. 2000). Rather, 'the phrase 'as a matter of right' in the regulatory definition of a 'claim' [49 C.F.R. §2.101 (2004)] requires only that the contractor specifically assert entitlement to the [non-monetary] relief sought. That is, the claim must be a demand for something due or believe to be due...' Alliant, 178 F.3b at 1265." (63 Fed. Cl. at 382).

The Court held:

> "...To the extent that the Contracting Officer provided a written interpretation of contract terms, her response constitutes a 'final decision' under the CDA, which is subject to this court's review. Cf Alliant, 178 F.3d at 1267 (noting that, notwithstanding any written assertion to the contrary, '[t]he contracting officer's

> decision…[which] stated in the letter that Alliant's contract interpretation was incorrect' constituted a final decision under the CDA)." (63 Fed. Cl. at 385) (Emphasis supplied).

Further, Colonel Amato's letter decision, dated November 30, 2006, to terminate the 1993 agreement is a final Contracting Officer's decision under the CDA because plaintiffs have no further administrative recourse and their only option for relief is this court appeal. By letter, dated November 30, 2006, Colonel Amato, stated in pertinent part:

> "This responds to your letter dated, October 26, 2006. Thank you for bringing the May 23, 2005 letter addressed to Ms. Judith Tarbox, to our attention. We have reviewed your request to continue the Common Financial and/or Administrative Control (CFAC) exemption.
>
> "We have decided to invoke paragraph 6.b of the 1993 agreement to terminate the agreement concurrent with Families First implementation. Thus your exemption will expire with the start up of Families First…" (Att. A hereto).

As the Court stated in Litton Systems, Inc. v. United States, 27 Fed. Cl. 306, 309 (1992):

> "…there can be no question that what we deal with here are final decisions…the letters reflect a Government position on a contract claim that has gone beyond the talking point. The action directed is in place. For the contractor, therefore, relief from the adverse determination cannot be obtained through discussion at the administrative level. Rather, relief may only be found in court. Such determination is clearly a 'final decision' for the purpose of the Contract Disputes Act." (Footnote omitted).

Colonel Amato's letter clearly meets these criteria for a final decision. He states that SDDC's position is that the agreement is to be terminated. Relief

from this decision cannot be obtained from SDDC and may be obtained only if this Court holds that SDDC has breached the agreement.

CONCLUSION

For the above stated reasons, we maintain that we have established that this Court has jurisdiction to entertain this complaint.[12] We respectfully request that the Court deny defendant's Motion to Dismiss plaintiffs' complaint and find that the Court has jurisdiction over plaintiffs' claim under the Contract Disputes Act, that the plaintiffs have stated a claim for which the Court can grant relief and that the Court require defendant to answer the complaint and set a schedule for plaintiffs to file a Motion for Summary Judgment.

Respectfully submitted,

s/Alan F. Wohlstetter

Alan F. Wohlstetter
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorney for Plaintiffs

Stanley I. Goldman

Of Counsel

Dated: August 6, 2007

[12] As defendant's counsel states in his Motion, p. 6, in deciding a motion to dismiss, the Court should view the allegations of the Complaint in the light most favorable to the plaintiffs citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Reynolds v. Army & Air Force Exch Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989).

Att. A
p. 1 of 1

DEPARTMENT OF THE ARMY
MILITARY SURFACE DEPLOYMENT AND DISTRIBUTION COMMAND
200 STOVALL STREET
ALEXANDRIA, VA 22332-5000

Operations and Analysis Branch

NOV 30 2006

Mr. Tom Olsen
President
American Vanpac Carriers, Inc. (AAVP)
Echo Forwarders, Inc. (ECHF)
1340 Arnold Drive, Suite 231
Martinez, California 94553-4189

Dear Mr. Olsen:

This responds to your letter dated October 26, 2006. Thank you for bringing the May 23, 2005 letter addressed to Ms. Judith Tarbox, to our attention. We have reviewed your request to continue the Common Financial and/or Administrative Control (CFAC) exemption.

We have decided to invoke paragraph 6.b. of the 1993 agreement to terminate the agreement concurrent with Families First implementation. Thus, your exemption will expire with the start up of Families First.

In our international program, TSPs in CFAC may not file rates in the same channel/same code of service. This is our policy for all international Families First Transportation Service Providers in the Families First program.

We appreciate your continued interest in the Department of Defense Personal Property Program.

Sincerely,

Steven L. Amato
Colonel, U.S. Air Force
Deputy Chief of Staff for Passenger
and Personal Property